CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JEFFREY D. NEDROW (CABN 161299)
Assistant United States Attorney

60 South Market St., Suite 1200
San Jose, California 95113
Telephone: (408) 535-5045
Jeff.nedrow@usdoj.gov

Attorneys for United States of America

**FILED**

Sep 02 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

~~SEALED BY ORDER OF THE COURT~~

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM SARRIS,<br><br>Defendant. | CASE NO. CR 26-71175-MAG<br><br>NOTICE OF PROCEEDINGS ON OUT-OF-DISTRICT CRIMINAL CHARGES PURSUANT TO RULES 5(c)(2) AND (3) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |

Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure that on or about September 2, 2026, the above-named defendant was taken into custody pursuant to an arrest warrant (copy attached) issued upon a

**XX Indictment**

Information

Criminal Complaint

pending in the Southern District of New York, Case Number 26-CR-399.

In that case (copy of indictment attached), the defendant is alleged to have violated the following statutes:

**COUNT ONE**

Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.l0b-5; and Title 18, United States Code, Section 2

(Securities Fraud)

**COUNT TWO**

Title 15, United States Code, Sections 78c(a)(18), 78o(c)(l)(A), and 78ff; Title 17, Code of Federal Regulations, Sections 240.15cl-2 and 240.15cl-8; and Title 18, United States Code, Section 2.

(Broker-Dealer Fraud)

**COUNT THREE**

Title 18, United States Code, Section 371

(Conspiracy To Commit Securities Fraud and Broker-Dealer Fraud)

**COUNT FOUR**

Title 18, United States Code, Section 371

(Conspiracy To Defraud the United States and To Conduct Unregistered Investment Company Transactions)

**COUNT FIVE**

Title 18, United States Code, Section 1343

(Wire Fraud)

**COUNT SIX**

Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.1 0b-5; and Title 18, United States Code, Section 2.

(Securities Fraud)

The maximum penalties are as follows:

**COUNTS ONE, TWO, AND SIX (Securities Fraud/Broker Dealer Fraud)**

Maximum 20 years imprisonment

Maximum fine $5 million

Up to three years of supervised release

$100 special assessment fee

**COUNTS THREE AND FOUR (Conspiracy)**

Maximum Five years imprisonment

Maximum fine $250,000

Up to three years of supervised release

$100 special assessment fee

**COUNT FIVE (Wire Fraud)**

Maximum 20 years imprisonment

Maximum fine $1 million

Up to three years of supervised release

$100 special assessment fee

Respectfully Submitted,

CRAIG H. MISSAKIAN
UNITED STATES ATTORNEY

Date: September 2, 2026

s/ Jeff Nedrow
JEFFREY D. NEDROW
Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM SARRIS,<br><br>Defendant. | **SEALED INDICTMENT**<br><br>26 Cr.<br><br>26 CRIM 399 |

**COUNT ONE**
**(Securities Fraud)**

The Grand Jury charges:

1. From at least in or about 2020 through at least in or about 2025, WILLIAM SARRIS, the defendant, engaged in a scheme to defraud tens of thousands of customers of Linqto Inc. ("Linqto"), an online investment platform he founded and controlled. SARRIS built Linqto's business on misrepresentations, omissions, and evasion of the securities laws, concealing from Linqto's customers the fraudulent and exorbitant markups he charged them—markups that, in some cases, exceeded 200%—even though he knew, because his own lawyers told him, that charging those markups was unlawful.

2. WILLIAM SARRIS, the defendant, accomplished his scheme by exploiting Linqto's customers' lack of visibility into the true price of the securities they bought through Linqto. Linqto marketed itself as a way for ordinary investors to invest in "pre-IPO" companies—private companies expected to eventually offer securities on a public exchange, but whose stock, in the meantime, did not have readily identifiable prices. SARRIS abused his informational advantage over his customers: he manufactured false scarcity to drive up prices, he manipulated Linqto's pricing model to maximize revenue while telling customers that they were buying at

"market" prices, and he pushed markups far beyond what his own lawyers repeatedly warned him was lawful.

3. WILLIAM SARRIS, the defendant, pursued this scheme because it stood to make him wealthy. SARRIS had a sizeable stake in Linqto and was hunting for a way to cash out. By in or about 2023, after SARRIS demanded a significant pay increase from Linqto's Board of Directors, SARRIS obtained an executive compensation package that substantially increased his ownership stake if an outside investor acquired Linqto or if Linqto became publicly traded. The markup scheme made it appear that Linqto was a successful and growing company, which was crucial to SARRIS's ability to sell his Linqto equity position.

4. To protect his scheme, WILLIAM SARRIS, the defendant, evaded regulatory regimes that would have forced disclosures and hampered his ability to charge the exorbitant markups fueling Linqto's growth. And when Linqto's finances came under pressure in or about January 2025, to help meet the company's revenue targets, SARRIS sold shares allocated to customers' holdings, without telling his customers.

5. By in or about mid-2025, Linqto collapsed into bankruptcy. By that time, the markup scheme had drawn in over $450 million from more than 13,000 customers.

**<u>SARRIS's Scheme to Charge Undisclosed, Excessive Markups</u>**

6. WILLIAM SARRIS, the defendant, launched the Linqto trading platform in or about 2020. Available both on a website and a mobile application, Linqto allowed retail investors to make relatively small investments in pre-IPO companies. Rather than sell customers shares outright, Linqto sold them units in special purpose vehicles, or "SPVs," each of which conferred *pro rata* economic exposure to the stock of a single pre-IPO company. The underlying shares were purchased through Linqto Liquidshares LLC ("Liquidshares")—the "Master LLC" that generated

new SPVs on demand—and Linqto's back office later assigned those shares to particular SPVs. SARRIS and others at Linqto capped the number of customers in any single SPV at 99, and whenever more than 99 customers sought exposure to a particular pre-IPO company, Linqto's back office simply created an additional SPV. For some popular pre-IPO companies, Linqto generated hundreds of SPVs.

7. Linqto's revenue depended on the markup, or spread, that WILLIAM SARRIS, the defendant, could extract between what Linqto paid to acquire a pre-IPO company's shares and what it charged a customer for the equivalent SPV units. SARRIS knew, from early in Linqto's operations, that charging customers undisclosed excessive markups—particularly those above ten percent—was unlawful. Nevertheless, between in or about 2020 and 2025, under SARRIS's direction, Linqto charged a median markup of approximately 60 percent, with over a quarter of Linqto's sales carrying markups exceeding approximately 80 percent and, in some transactions, exceeding 200 percent.

8. WILLIAM SARRIS, the defendant, further inflated Linqto's markups by repeatedly misrepresenting the amount of inventory that Linqto had available to sell. At SARRIS's direction, Linqto misrepresented that certain offerings were sold out to create "FOMO," or fear of missing out, among its customer base. By artificially constraining the supply of a particular offering, SARRIS concealed excessive markups within perceived higher market prices. On or about October 2, 2021, for example, SARRIS emailed coconspirator Joseph Endoso, Linqto's second-in-command, that SARRIS planned to "sell . . . out" a particular pre-IPO company on Linqto's platform "in two hours even if it does not completely sell," manufacturing the appearance of a sold-out offering so that he could then raise the price he charged customers for what remained.

9. Beginning in or about April 2023, WILLIAM SARRIS, the defendant, directed

Linqto to price certain offerings using an algorithm—known as an Automated Market Maker, or "AMM"—which, in theory, was designed to set prices based on supply and demand. When describing the AMM offerings to customers, SARRIS caused Linqto to represent that pricing would be "market-based," and "determined by actual supply and demand." Those representations were false, and SARRIS knew it: the AMM was never fully automated, and SARRIS privately acknowledged that its variables had to be implemented "manually." Days before the AMM pricing launched, SARRIS joked that pricing would be set by "a little Wizard of Oz . . . don't pay attention to that man behind the screen," adding, in reference to the false market-based pricing pitch Linqto was about to make to customers, "fake it till you make it, baby."

10. WILLIAM SARRIS, the defendant, purposefully adjusted the AMM's parameters to increase Linqto's revenue, while telling customers the prices for AMM offerings were based on supply and demand. On or about September 21, 2023, SARRIS wrote that he wanted to hire someone "devoted full time to market making" because, as he put it, "[w]hen [he had] time to adjust the param[eters of AMM] all day long, [he could] improve [Linqto's] revenue by $50k that day." On or about October 11, 2023, SARRIS mused that an artificial intelligence program that "had my intelligence" could do the same AMM manipulation "24/7" for "significant gains." All the while, SARRIS continued to misrepresent AMM offering prices as market-driven even as he manipulated them to drive markups higher. For example, on or about January 11, 2024, after Linqto received a customer inquiry about price fluctuations for a particular offering, SARRIS told his colleagues, "I changed the price intentionally," adding that "[t]he only explanation needed for those who ask is that the price is based on supply and demand and we added more supply."

**<u>SARRIS Disregarded Repeated Warnings That Linqto's Markups Were Unlawful</u>**

11. Linqto's legal troubles began almost as soon as its securities business did. In or

about 2020, a lawyer for Linqto advised WILLIAM SARRIS, the defendant, that if Linqto wished to profit through spreads charged on the sale of securities, it needed to register as a broker-dealer with the U.S. Securities and Exchange Commission (the "SEC"). The lawyer also warned Linqto personnel that the SEC would likely deem markups of ten percent or more to be unlawful. SARRIS did not like that advice and went on charging markups—undisclosed, and never through a registered broker-dealer—exactly as the lawyer had warned him not to.

12. The warnings did not stop there. The following year, in or about 2021, a second lawyer similarly advised WILLIAM SARRIS, the defendant, that because Linqto earned "transaction-based compensation" on every sale, it "w[ould] likely be deemed [by a regulator to be] a broker-dealer." That lawyer even raised Linqto's business model with SEC personnel on a no-name basis in or about March 2021 and came back with the same answer: Linqto needed to register as a broker-dealer. SARRIS again declined.

13. By the time Linqto actually obtained regulatory approval to operate a broker-dealer entity in or about the spring of 2023, WILLIAM SARRIS, the defendant, had already been told twice that he needed one. He still would not use that entity. Routing Linqto's offerings to customers through a registered broker-dealer would have constrained SARRIS's ability to charge excessive markups, so the entity sat largely unused while Linqto continued to use Liquidshares to capture the excessive and undisclosed markups it was charging customers.

14. WILLIAM SARRIS, the defendant, had powerful personal incentives to keep ignoring these warnings. As the founder of Linqto, SARRIS and close family members held significant equity positions in the company and SARRIS started seeking to cash out soon after the Linqto platform went live. In or about October 2023, Linqto's Board granted SARRIS approximately 1.9 million restricted units of Linqto stock that would vest only if Linqto completed

an IPO, acquisition, or capital raise valued at $500 million or more by on or about December 31, 2025. SARRIS understood that outcome depended on Linqto's revenue—and Linqto's revenue depended on the unlawful and exorbitant markups SARRIS was charging. SARRIS continued to pursue an "exit" for his position in Linqto with mounting urgency, brushing aside warnings along the way.

15. To prepare for a potential IPO of Linqto, WILLIAM SARRIS, the defendant, hired Linqto's first general counsel. Just before the general counsel started, SARRIS received a scathing compliance memorandum warning, among other things, that "it is highly likely that the SEC would view Linqto's charging of [m]arkups without adequate disclosure to investors as . . . constituting violations of" the securities laws. After receiving the memorandum, Endoso messaged SARRIS, "I was starting to try on orange jerseys for size last night"—a reference to a prison jumpsuit. Linqto's new general counsel warned SARRIS directly and repeatedly about charging undisclosed, exorbitant markups. For example, on or about June 7, 2024, the general counsel emailed SARRIS a link to an SEC press release describing an enforcement action against individuals who had sold pre-IPO interests without disclosing markups ranging from approximately 19% to 105%, commenting: "[P]re-IPO companies are on the SEC's radar" and that this was "[a]ll the more reason to do things the right way." SARRIS did not change course.

16. In or about November 2024, a pre-IPO company that was popular with Linqto customers ("Company-1") stopped authorizing transfers of its shares to Linqto and demanded disclosures about Linqto's pricing practices before it would resume. That effectively prevented Linqto from selling customers SPV units backed by Company-1 stock. Rather than come clean, WILLIAM SARRIS, the defendant, Endoso, and others prepared a document—which SARRIS caused to be sent to Company-1—that falsely described Linqto's pricing practices as the product

of a careful cost analysis rather than on an effort to maximize markups.

17. On or about December 2, 2024, Linqto's general counsel again warned WILLIAM SARRIS, the defendant, that Linqto's "lack of adequate disclosure raises issues under the anti-fraud provisions of the federal securities laws." SARRIS ignored the general counsel's warnings and continued to charge customers exorbitant and undisclosed markups. On or about December 13, 2024, facing mounting pressure from Linqto's Board and the general counsel, SARRIS agreed to "turn[] off dynamic pricing [that is, use of the AMM] today." The reprieve was short-lived. A little over a week later, without telling the Board or the general counsel, SARRIS instructed a Linqto employee to "update the equation"—that is, to turn the AMM back on and to resume charging excessive, undisclosed markups.

**SARRIS Deliberately Circumvented the Investment Company Act**

18. In part to avoid scrutiny of its markups from regulators like the SEC, WILLIAM SARRIS, the defendant, intentionally structured Linqto's operations to evade the investor protections mandated by the Investment Company Act (the "Act") and associated SEC regulations. The Act requires entities primarily engaged in the business of trading securities to register as investment companies and make certain public disclosures, including as to fees. One exception to the Act's requirements is for entities that have no more than 100 investors and are not publicly traded. Under the SEC's "integration doctrine," however, multiple related entities that offer exposure to the same type of stock are treated as a single entity for purposes of the 100-investor threshold.

19. To skirt the Act's requirements, WILLIAM SARRIS, the defendant, caused Linqto to create additional SPVs for the same issuer every time the existing SPV reached 99 investors. In or about 2020 SARRIS was warned by a number of professionals that the Act's 100-investor

threshold applied on an integrated basis, such that multiple SPVs capped at 99 investors apiece would not place Linqto outside the Act's registration requirements. SARRIS understood that warning but did not heed it. Registering Linqto's SPVs would have required Linqto to disclose its markups to customers and to submit its practices to SEC oversight, almost certainly surrendering its outsized profit margins. Instead, SARRIS agreed with Endoso and others to keep creating unregistered SPVs.

20. Moreover, when, in or about 2022, a potential acquiror of Linqto pressed WILLIAM SARRIS, the defendant, about Linqto's compliance with the Act and integration doctrine, SARRIS falsely told the acquiror that Linqto had obtained a written legal opinion confirming that Linqto's structure complied with the Act. In the course of that transaction, SARRIS also described Linqto's ability to create additional 99-investor SPVs as its "secret sauce."

**SARRIS Improperly Tendered Shares Underlying Customers' Holdings**

21. By the end of 2024, Linqto was under mounting pressure to generate revenue, in part because of Company-1's refusal to authorize new share transfers, and WILLIAM SARRIS, the defendant, looked for ways to meet that need. On or about December 10, 2024, SARRIS learned that Company-1 was conducting a tender offer—a time-limited offer to buy stock from existing shareholders at a premium price. SARRIS knew that Linqto had no shares available to tender: he had written days earlier that Linqto had "no more" of Company-1's stock. Nevertheless, on or about January 3, 2025, SARRIS offered to tender shares that were not Linqto's to give away—they had already been allocated to particular SPVs that Linqto's customers purportedly purchased stakes in. Despite this, SARRIS proceeded to tender them anyway. Ultimately, Company-1 bought over $18 million worth of shares from Linqto in the tender offer. SARRIS did not obtain the consent of, or even notify, his customers, before tendering those shares to

Company-1.

Statutory Allegations

22. From at least in or about 2020 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, WILLIAM SARRIS, the defendant, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, SARRIS engaged in a scheme and course of business to defraud Linqto's customers, and to make misleading statements and omissions, about Linqto's operations and the pricing and availability of Linqto's securities offerings.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

**COUNT TWO**
**(Broker-Dealer Fraud)**

The Grand Jury further charges:

23. The allegations contained in paragraphs 1 through 21 of this Indictment are repeated and realleged as if fully set forth herein.

24. From at least in or about 2020 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, WILLIAM SARRIS, the defendant, willfully and

knowingly, being a broker and dealer, by use of the mails and a means and instrumentality of interstate commerce, effected a transaction in, and induced and attempted to induce the purchase and sale of, a security by means of a manipulative, deceptive, and other fraudulent device and contrivance, in violation of Title 17, Code of Federal Regulations, Sections 240.15c1-2 and 240.15c1-8, by: (a) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, which statement and omission was made with knowledge and reasonable grounds to believe that it was untrue and misleading; and (c) representing to a customer, while participating and otherwise financially interested in the primary and secondary distribution of a security which is not admitted to trading on a national securities exchange, that such security was being offered to such customer "at the market" and at a price related to the market price, it not being the case that SARRIS knew or had reasonable grounds to believe that a market for such security existed other than that made, created, or controlled by him, or by any person for whom he was acting or with whom he was associated in such distribution, or by any person controlled by, controlling or under common control with him, to wit, SARRIS, while operating Linqto as a broker-dealer, engaged in a scheme and course of business to defraud Linqto's customers by making material misrepresentations about Linqto's operations and about the pricing and availability of Linqto's securities offerings, including false statements that certain securities were being offered "at the market" and at market-based prices.

(Title 15, United States Code, Sections 78c(a)(18), 78o(c)(1)(A), and 78ff; Title 17, Code of Federal Regulations, Sections 240.15c1-2 and 240.15c1-8; and Title 18, United States Code, Section 2.)

**COUNT THREE**

**(Conspiracy To Commit Securities Fraud and Broker-Dealer Fraud)**

The Grand Jury further charges:

25. The allegations contained in paragraphs 1 through 21 of this Indictment are repeated and realleged as if fully set forth herein.

26. From at least in or about 2020 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, WILLIAM SARRIS, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, (i) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, and (ii) broker-dealer fraud, in violation of Title 15, United States Code, Sections 78c(a)(18), 78o(c)(1)(A), and 78ff, and Title 17, Code of Federal Regulations, Sections 240.15c1-2 and 240.15c1-8.

27. It was a part and an object of the conspiracy that WILLIAM SARRIS, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of a means and an instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, would and did use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operates and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, SARRIS agreed to engage in a scheme and course

of business to defraud Linqto's customers, and make misleading statements and omissions, about Linqto's operations and the pricing and availability of Linqto's securities offerings.

28. It was further a part and an object of the conspiracy that WILLIAM SARRIS, the defendant, and others known and unknown, willfully and knowingly, being a broker and dealer, by use of the mails and a means and instrumentality of interstate commerce, would and did effect a transaction in, and induce and attempt to induce the purchase and sale of, a security by means of a manipulative, deceptive, and other fraudulent device and contrivance, in violation of Title 17, Code of Federal Regulations, Sections 240.15c1-2 and 240.15c1-8, by: (a) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, which statement and omission was made with knowledge and reasonable grounds to believe that it was untrue and misleading; and (c) representing to a customer, while participating and otherwise financially interested in the primary and secondary distribution of a security which is not admitted to trading on a national securities exchange, that such security was being offered to such customer "at the market" and at a price related to the market price, it not being the case that SARRIS knew or had reasonable grounds to believe that a market for such security existed other than that made, created, or controlled by him, or by any person for whom he was acting or with whom he was associated in such distribution, or by any person controlled by, controlling or under common control with him, to wit, SARRIS agreed to engage in a scheme and course of business to defraud Linqto's customers by making material misrepresentations about Linqto's operations and about the pricing and availability of Linqto's securities offerings, including false statements that certain securities were being offered "at the market" and at

market-based prices.

Overt Acts

29. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about October 21, 2021, WILLIAM SARRIS, the defendant, emailed Endoso that SARRIS planned to "sell . . . out" a particular pre-IPO company on Linqto's platform "in two hours even if it does not completely sell."

b. On or about January 11, 2024, when another Linqto executive asked why there was price fluctuation in an SPV offering exposure to shares of Linqto's own stock, SARRIS wrote: "I changed the price intentionally. . . . The only explanation needed for those who ask is that the price is based on supply and demand and we added more supply."

(Title 18, United States Code, Section 371.)

**COUNT FOUR**
**(Conspiracy To Defraud the United States and To Conduct Unregistered Investment Company Transactions)**

The Grand Jury further charges:

30. The allegations contained in paragraphs 1 through 21 of this Indictment are repeated and realleged as if fully set forth herein.

31. From at least in or about 2020 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, WILLIAM SARRIS, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other: (i) to defraud the United States and an agency thereof, to wit, the SEC; and (ii) to commit an offense against the United States, to wit, conducting unregistered

investment company transactions, in violation of Title 15, United States Code, Section 80a-7(b)(1).

32. It was a part and an object of the conspiracy that WILLIAM SARRIS, the defendant, and others known and unknown, would and did defraud the United States, and an agency thereof, to wit, the SEC, to wit, SARRIS agreed to defraud the SEC and thereby its oversight of investment companies and impair its regulation of charged markups.

33. It was further a part and an object of the conspiracy that WILLIAM SARRIS, the defendant, and others known and unknown, acting as and on behalf of an underwriter for an investment company, organized and otherwise created under the laws of the United States and of a State and not having a board of directors, and not registered under Title 15, United States Code, Section 80a-8, and not exempt under Title 15, United States Code, Section 80a-6, directly and indirectly, willfully and knowingly, would and did offer for sale, sell, and deliver after sale, by use of the mails and a means and instrumentality of interstate commerce, a security and an interest in a security of which such company is the issuer, in violation of Title 15, United States Code, Section 80a-7(b)(1), to wit, SARRIS agreed to operate Linqto such that Liquidshares was an underwriter selling units issued by multiple SPVs—each of which was limited to no more than 99 customers and was not registered as an investment company with the SEC—that offered exposure to shares of a single issuer.

<u>Overt Acts</u>

34. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about August 15, 2021, WILLIAM SARRIS, the defendant, messaged Endoso that, because an SPV offering exposure to a particular type of stock had reached

99 customers, SARRIS simply created a new SPV to offer exposure to shares of that same type of stock.

b. On or about November 21, 2022, during a phone call with representatives of a company that was interested in purchasing Linqto, SARRIS falsely told the acquiror that Linqto had obtained a written legal opinion confirming that Linqto's structure complied with the Act.

(Title 18, United States Code, Section 371.)

**COUNT FIVE**
**(Wire Fraud)**

The Grand Jury further charges:

35. The allegations contained in paragraphs 1 through 21 of this Indictment are repeated and realleged as if fully set forth herein.

36. From at least in or about 2024 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, WILLIAM SARRIS, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, although SARRIS understood he was obligated to hold and safeguard the shares of Company-1 allocated to SPVs for the benefit of Linqto customers, SARRIS, without the knowledge or permission of those Linqto customers, tendered those shares back to Company-1.

(Title 18, United States Code, Sections 1343 and 2.)

**COUNT SIX**
**(Securities Fraud)**

The Grand Jury further charges:

37. The allegations contained in paragraphs 1 through 21 of this Indictment are repeated and realleged as if fully set forth herein.

38. From at least in or about 2024 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, WILLIAM SARRIS, the defendant, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, although SARRIS understood he was obligated to hold and safeguard the shares of Company-1 allocated to SPVs for the benefit of Linqto customers, SARRIS, without the knowledge or permission of those Linqto customers, tendered those shares back to Company-1.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

**FORFEITURE ALLEGATION**

39. As a result of committing the offenses alleged in Counts One through Six of this Indictment, WILLIAM SARRIS, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c),

any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

**Substitute Assets Provision**

40. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

[redacted]

August 31, 2026

JAMES M. MCDONALD
United States Attorney

Mod AO 442 (09/13) Arrest Warrant AUSA Name & Telno: S. Logarajah, A. Rothman, S. Rothschild, 212-637-2272 / 2580 / 2504

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

United States of America
v.
William Sarris

*Defendant*

Case No. 26 Cr. 399

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* William Sarris,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☐ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

Cts 1 & 6: securities fraud (15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2); Ct 2: broker-dealer fraud (15 U.S.C. §§ 78c(a)(18), 78o(c)(1)(A) & 78ff; 17 C.F.R. §§ 240.15c1-2 & 240.15c1-8; 18 U.S.C. § 2); Ct 3: conspiracy to commit securities fraud and broker-dealer fraud (18 U.S.C. § 371); Ct 4: conspiracy to defraud the United States and to conduct unregistered investment company transactions (18 U.S.C. § 371); Ct 5: wire fraud (18 U.S.C. §§ 1343 & 2)

Date: 08/31/2026

Tammi M. Hellwig
*Issuing officer's signature*

City and state: New York, New York

Tammi M. Hellwig
*Printed name and title*

**Return**

This warrant was received on *(date)* ____________, and the person was arrested on *(date)* ____________
at *(city and state)* ____________ .

Date: ____________

____________
*Arresting officer's signature*

____________
*Printed name and title*